(99 App. Div. 159)

## CURNEN v. REILLY.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. APPEAL—REFEREE'S DECISION—REVIEW—WEIGHT OF EVIDENCE.

　　The decision of a referee as to the terms of an oral agreement sued on will not be reversed on appeal unless clearly against the weight of evidence.

2. ASSIGNMENT FOR CREDITORS—SALE OF ASSETS—PURCHASE BY ASSIGNOR—VALIDITY.

　　Plaintiff made an assignment of his stock, invoiced at $28,000.00, for which, by reason of the season of the year, the assignee was only able to obtain a bid of $8,500. Plaintiff thereupon made bona fide arrangements with defendant to furnish him money with which to purchase the stock, which he purchased from the assignee for $9,500, as defendant's agent, and thereafter opened a store as such agent, and sold the stock piecemeal during a period of 18 months for $19,031.22, of which about $4,000 was paid for rent and expenses. *Held* that, in the absence of any evidence on which bad faith or inequitable advantage could be predicated, the transaction could not be held contrary to public policy as a matter of law as fraudulent as to the assignor's creditors.

　　Laughlin, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Cornelius B. Curnen against Robert B. Reilly. A judgment was rendered in favor of plaintiff on a referee's report, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

John G. McGuire, for appellant.
Charles E. Mahony, for respondent.

O'BRIEN, J. The action is to recover for breach of an oral contract, and the questions presented relate to its terms. As to what occurred after the agreement was reached, there is no dispute. The plaintiff had been engaged in the toy business, had overbought, and the failure to find a market compelled an assignment. The stock was invoiced at about $28,000, but as the assignment was made in the summer time, when there was no demand, the assignee concluded that it would be better to sell at private sale than by auction. He, therefore, sought bids for the stock as a whole. The highest offer was about $8,500. At this point the plaintiff, feeling sure that if the goods could be carried along to the Christmas season, and if he could personally dispose of them among his trade acquaintances, they could be sold at a much higher price, went to the defendant and told him the situation, asking if he would not advance the money to buy the goods and permit him to sell them. The defendant declined, as he was not familiar with the toy business; but on the plaintiff's persisting, and showing him more of the prospects, he finally looked upon the plan with favor, and, in accordance with plaintiff's suggestion, made an offer of $9,500 for the goods to the assignee. This offer was accepted, and the goods delivered to the defendant. The defendant turned them

¶ 1. See Appeal and Error, vol. 3, Cent. Dig. §§ 4006, 4008, 4011.

over to the plaintiff, who opened a store and commenced to sell the goods under his own name as agent. When sales were made, the plaintiff gave the money to the defendant, and eventually, within about 18 months, they were all sold, the sums remitted aggregating $19,031.22. The plaintiff was paid $4,000, and various items for rents, etc. Of the balance in the defendant's hands, the plaintiff claims that the defendant is entitled to receive back the $9,500 which he advanced, and, in addition, $500 which it was agreed he should receive for advancing the money, and that the remainder—$3,733.10—should be paid to the plaintiff. The action is brought to recover this amount.

The plaintiff's account of the agreement entered into with the defendant is that the defendant was to advance or loan him the $9,500 in order to help him out and enable him eventually to pay his creditors and re-establish himself in business; that the defendant said it would be worth something for advancing the money, and suggested $500, and to this the plaintiff assented; and that, when the defendant in final settlement offered him 60 per cent., he immediately refused to accept such sum, and reminded him of the agreement of $500 for the use of the money. This version is in part corroborated by the testimony of Dr. McGuire, who says he told the defendant in the beginning that he would personally advance the money to the plaintiff if he had it, and wished the defendant would do so, and the latter said he would inquire into the matter and help him, but did not want to lose by the transaction. On the other hand, the defendant asserts that he bought the goods on his own account, and employed the plaintiff to sell them. He denied that he had agreed to accept $500 for advancing the money. He says he offered to pay to the plaintiff 60 per cent., which he thought a fair adjustment. The referee decided the disputed question as to the terms of the agreement in plaintiff's favor, and, as we do not think that his decision is clearly against the weight of evidence, we have no right to disturb it.

The more serious question bears upon the legality of the arrangement or contract under which the plaintiff seeks to recover. The law is well settled that, in dealing with property in the hands of an assignee who is trustee for creditors, the assignor must observe the utmost good faith and honesty, to the end that he should not obtain any benefit or advantage to himself out of the assigned estate to the detriment of the creditors. And, in discussing the question upon the facts before us, it is first to be noted that no creditor is here objecting, nor has it been shown that the arrangement for the purchase of the goods by the plaintiff in any way resulted in injury to the creditors. It may be, were the question directly presented upon an attack by the creditors, that, though the transaction was not inherently bad or immoral or unconscionable, the courts might go to the extent of holding it voidable. As we have pointed out, however, the question here is between the plaintiff, who in reality was the purchaser from the assignee, and the defendant, who, as the referee has found, loaned plaintiff the money for that purpose. There is no rule of law or statute to prevent as assignor, after the assignment is made, from becoming a purchaser, provided it is done fairly and openly and without detriment to the rights of creditors.

There is no claim that, in the effort to obtain the best price for the

property, the assignee did or refrained from doing anything but what was for the best interests of the creditors. If there had been evidence here, however slight, from which the inference could be drawn that the transaction was one hatched out between the assignor and the assignee for the benefit of the former, we would have little hesitancy in setting aside the arrangement and refusing to assist the plaintiff in obtaining advantage therefrom. Apart, however, from the fact appearing that the plaintiff assisted the assignee in appraising the property (which was most natural on account of plaintiff's familiarity with the stock and its value), there is nothing in this record to show that there was anything wrong or fraudulent in his conduct. The season of the year was unsuited for a sale of the kind of stock in his hands, and hence it does not appear that the assignee's course in looking around for the purpose of effecting a private sale was actuated by bad motives, or was wanting in judgment, or detrimental to the interest of the creditors.

Starting, therefore, with the fact that the assignee, in the exercise of his best judgment, concluded to sell at private sale, in addition it appears that, in selling to the plaintiff—though the sale was nominally to the defendant—he did nothing which would subject him to criticism; nor do we think that the plaintiff, who was the assignor, was under such circumstances prevented from purchasing at private sale, provided he paid a fair and reasonable price, and an amount equal to or more than the assignee could obtain from other bidders. According to the testimony, the best bid obtainable was $8,500, while the price actually paid for the stock by the plaintiff was $9,500. It is true that, as the result of the plaintiff's knowledge, experience, and the time given for a period of 18 months, there was realized for the stock at retail nearly $20,000. This was a great advance over the sum paid by the plaintiff, but taking into account the factors which produced this result, to which we have adverted, viz., the manner in which the stock was handled, and the period during which the plaintiff was thus engaged, we have an explanation of the cause of the great difference between the price paid and the amount realized. Although the plaintiff did not bid openly in his own name, in view of his financial straits, this cannot, as matter of law, be held fraudulent. A transaction such as this will always be carefully scrutinized by the courts, and slight evidence of bad faith or resulting injury to creditors will be sufficient to cause the courts to condemn it. In the absence, however, of any facts upon which bad faith or inequitable advantage can be predicated, we do not think that, even though inclined to view it with disfavor, we would be justified in holding the transaction void, or the contract such as, between the parties, should not be enforced.

We think, therefore, that the judgment must be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and McLAUGHLIN, JJ., concur. LAUGHLIN, J., dissents on the ground that permitting the purchase by the assignor is against public policy.